IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| CHARLES STURDIVANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 7:16-cv-1958-LSC |
| | ) | |
| NANCY BERRYHILL, | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

### I.    Introduction

The plaintiff, Charles Sturdivant, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB"). Mr. Sturdivant timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Sturdivant was fifty-five years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has an eleventh grade education. (Tr. at 46.) His past work experiences include employment as a material handler and industrial

cleaner. (Tr. at 72.) Mr. Sturdivant claims that he became disabled on January 15, 2014, due to high blood pressure, high cholesterol, diabetes, diabetic nerve pain, numbness, and functional illiteracy. (Tr. at 26, 147-53.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The

decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets, or is medically equal to, the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the plaintiff's impairment, or combination of impairments, does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e).

The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairments, or combination thereof, does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Mr. Sturdivant met the insured status requirements of the Social Security Act through the date of his decision. (Tr. at 23.) He further determined that Mr. Sturdivant has not engaged in SGA since the alleged onset of his disability. (*Id.*) The ALJ then determined that while Plaintiff has the following medically determinable impairments: "obesity, diabetes, status post laparoscopic cholecystectomy, minimal plaque and 20% stenosis in the right carotid artery, and multi-level spondylitic changes in the cervical spine," none of these impairments is "severe" based on the requirements set forth in the regulations because individually, and in combination, these impairments cause no more than slight limitations in Plaintiff's ability to perform work activities for 12 consecutive months. (Tr. at 24-25.) Accordingly, it was not necessary for the ALJ to conduct the remaining parts of the

sequential evaluation process, and he found Plaintiff not disabled from January 15, 2014, through the date of his decision. (Tr. at 35.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*,

793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.    Discussion

Mr. Sturdivant alleges that the Commissioner's decision should be reversed and remanded for two reasons: (1) the ALJ erred in finding that he did not have any severe impairments and (2) the ALJ should have given more weight to the opinion of his treating physician.

### A.    Severe Impairment(s)

A severe impairment is an impairment that significantly limits a claimant's physical or mental abilities to do basic work activities. *See* 20 C.F.R. §§

404.1520(a)(4)(ii), (c), 404.1521(a); Social Security Regulation ("SSR") 96-3p; *Bridges*, 815 F.2d at 625. Examples of basic work activities are physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. SSR 85-28. An impairment must be severe for at least 12 consecutive months to be considered a severe impairment at step two of the sequential evaluation process. *See* 20 C.F.R. §§ 404.1505(a), 404.1509, 404.1520(a)(4)(ii); SSR 96-3p. The claimant bears the burden of proving that an impairment is a severe impairment. *See Doughty*, 245 F.3d at 1278. Meanwhile, a non-severe impairment is "merely a slight abnormality which has a minimal effect on the general ability to work." *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986).

In support of his argument that the ALJ should have found that he had at least one severe impairment at step two of the sequential evaluation, Plaintiff points out that various physicians diagnosed him with ailments such as Type II Diabetes, polyneuropathy, hypercholesterolemia, hyperlipidemia, hypertension, lower back pain, numbness of the lower limb, chronic fatigue, chronic rectal pain, and erectile

dysfunction. However, diagnoses do not establish work-related limitations. As the Eleventh Circuit has noted, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).

Here, Plaintiff's medical records provide substantial evidence that Plaintiff did not have a severe impairment. (Tr. at 257-58, 260-61, 263-64, 271-72, 289-90, 292, 325-26, 329-30, 333-34, 338-39, 341-42, 345-46, 349-50). As detailed by the ALJ in over 11 single-spaced pages, the evidence presented to him showed that Plaintiff indeed had a variety of complaints, and examiners diagnosed numerous ailments and prescribed medications, but examinations did not reveal significant objective clinical findings indicating Plaintiff's conditions affected his ability to work. (Tr. at 257-58, 260-61, 263-64, 271-72, 289-90, 292, 325-26, 329-30, 333-34, 338-39, 341-42, 345-46, 349-50).

For example, Mr. Sturdivant was treated by Dr. James Robinson at Anderson Physician Alliance on January 13, 2014, and February 11, 2014. (Tr. at 275.) He complained of numbness in his right leg and both hands, diabetes, and erectile dysfunction. (*Id.*) Dr. Robinson's examination findings were unremarkable.

Plaintiff exhibited no motor weakness and his balance and gait appeared intact. (Tr. at 276.) Dr. Robinson diagnosed uncomplicated diabetes mellitus, polyneuropathy in diabetes, hypercholesterolemia, and erectile dysfunction, and prescribed various medications. (Tr. at 277.) Dr. Robinson concluded, "I am not sure what is causing patient[sic] neuropathy [numbness]. I think it is probably related to meralgia paresthetica though patient's *diabetes [is in] good control*." (Tr. at 272 (emphasis added)).

Plaintiff was then seen by Dr. Christy Mnzava at Immediate Care Family Clinic during the period of February 2014 through April 2014. (Tr. at 282-311.) Although he was diagnosed with hyperlipidemia, hypertension, lower back pain, numbness of the lower limb, and diabetes, Dr. Mnzava also reported unremarkable examination findings. (*Id.*) For example, Plaintiff had a normal heart rate, no leg edema, and a normal gait. (Tr. at 290.) On Plaintiff's last visit with Dr. Mnzava on April 16, 2014, Dr. Mnzava noted that Plaintiff had "requested many times about getting (a) release to be off work because medications make him drowsy." (Tr. at 295.) Dr. Mnzava did not give a work excuse on that visit and noted that Plaintiff would have to see a specialist or discuss the issue with his treating physician. (*Id.*) Plaintiff was scheduled to return on May 6, 2014, for follow-up, but he did not

appear. At all of his visits with Dr. Mnzava, she always released Plaintiff to work "with no restrictions." (Tr. at 282-311.)

On April 23, 2014, Mr. Sturdivant began treatment with Dr. Judy C. Travis. She treated him from April 23, 2014, through May 14, 2015. (Tr. at 255-64.) He reported burning pain or cold pain in both feet, right greater than left. (Tr. at 256.) Dr. Travis noted bilateral decreased sensation in both lower legs and diagnosed polyneuropathy in diabetes, along with diabetes and hypertension. (Tr. at 255-64, 323-51). Dr. Travis also completed a Medical Source Statement (Physical) on May 14, 2015. (Tr. at 353-54.) In it she opined that Plaintiff could perform a reduced range of light work. (*Id.*) As discussed further herein, the ALJ ultimately gave little weight to her medical source statement because it conflicted with her treatment notes which reflected routine, conservative care for Plaintiff's symptoms, as well as the opinions of the other treating physicians in the record. (Tr. at 32.)

Additionally, while Dr. Travis referred Plaintiff to Two Rivers Surgical Associates because he complained of right upper quandrant pain, his initial examination there was unremarkable. (Tr. at 310-17.) Dr. Keith Roberts reported normal findings in areas such as range of movement but diagnosed Plaintiff with bilary dyskinesia. (Tr. at 311.) Plaintiff underwent a surgical procedure on June 17, 2014, to investigate his condition further. (Tr. at 311-17.) The diagnostic report of a

specimen from the procedure showed the claimant had "mild chronic cholecystitis" but "no evidence of malignancy." (*Id.*) The follow up visit revealed the claimant was "feeling better" and no reports of pain were reported at that visit. (Tr. at 317.)

In sum, the aforementioned medical records constitute substantial evidence supporting the ALJ's decision that Plaintiff did not have any impairments that could be considered "severe" at step two of the sequential evaluation.

## B.   Weight to Treating Physician's Opinion

As a general matter, the weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends upon, among other things, the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;"

2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is a "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502. The regulations and case law set forth a general preference for treating sources' opinions over those of non-treating sources, and non-treating sources over non-examining sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Thus, the opinions of a one-time examiner or of a non-examining source are not entitled to any deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Further, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)). Procedurally, the ALJ must articulate the weight given to different medical opinions and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). "Good cause" for discounting a treating physician's opinion exists when: (1) the treating physician's opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the doctor's own medical records. *Phillips*, 357 F.3d at 1241 (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

Further, opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in a physician's evaluation of a plaintiff's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who

bears the responsibility for assessing a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1546(c).

As noted, Mr. Sturdivant was treated by Dr. Travis from April 23, 2014, through May 14, 2015. She noted bilateral decreased sensation in both lower legs and diagnosed polyneuropathy in diabetes, along with diabetes and hypertension. (Tr. at 255-64, 323-51). Dr. Travis also completed a Medical Source Statement (Physical) on May 14, 2015. (Tr. at 353-54.) She opined that Plaintiff could perform a reduced range of light work, stating that he could sit four hours and stand or walk one hour in an eight-hour workday, could occasionally lift and/or carry up to twenty pounds, should avoid dust, fumes, gasses, extremes of temperature, humidity and other environmental pollutants, could frequently perform gross manipulation, could occasionally push and pull arm and/or leg controls, climb stairs or ladders, balance, reach (including overhead) and operate motor vehicles, could rarely perform fine manipulation, bend or stoop, could never work with or around hazardous machinery, and would be expected to miss work more than three times a month because of his condition. (*Id.*) She specifically identified as ailments Type II Diabetes w/neuropathy, hypertension, chronic fatigue and chronic rectal pain. (Tr. at 353). She stated Mr. Sturdivant suffered pain to such an extent as to be distracting to adequate performance of daily activities. (*Id.*) She stated that physical

activity would increase his pain greatly, to such a degree as to cause distraction from tasks or total abandonment of tasks. (*Id.*) She stated that significant side effects could be expected from Mr. Sturdivant's mediations. (*Id.*) She concluded that his condition could reasonably be expected to cause this level of pain, and his pain prevented him from maintaining attention, concentration or pace for periods of at least two hours. (Tr. at 354).

The ALJ gave little weight to Dr. Travis's medical source statement. (Tr. at 32.) In support, he noted that it was inconsistent with her own treatment notes, which consistently showed unremarkable physical examinations, it appeared to be based primarily on Plaintiff's subjective complaints, and it was not consistent with the other medical opinions of record, primarily Dr. Mnzava's. (Tr. at 31-34.)

Good cause exists for the ALJ's decision to give little weight to Dr. Travis's medical source statement. Dr. Travis's treatment notes indeed showed nothing more than relatively normal physical health. Dr. Travis noted Plaintiff exhibited intact cranial nerves; active and equal bilateral deep tendon reflexes and superficial reflexes; full range of motion in all joints; well-functioning muscles; clear respiration; and regular heart rate and rhythm. (Tr. at 257-58, 260-61, 263-64, 325-26, 329-30, 333-34, 338-39, 341-42, 345-46, 349-50). Additionally, the notes of other doctors and medical professionals who treated and examined Plaintiff do not

indicate that his condition was as limiting as Dr. Travis opined. For instance, Dr. Robinson noted Plaintiff was alert and oriented; had an intact memory; exhibited no motor weakness; had intact balance, gait, and coordination; had normal fine motor skills; and had preserved and symmetric deep tendon reflexes. (Tr. at 271). Dr. Robinson stated he was not sure what caused Plaintiff's numbness considering his diabetes was well-controlled, but he advised he undergo an EMG. (Tr. at 272). Similarly, Dr. Mnzava's examinations revealed normal findings. (Tr. at 289-300). Plaintiff again showed normal gait, normal heart rate and rhythm, and normal respiration. (Tr. at 290). Dr. Mnzava stated Plaintiff could return to work with no restrictions. (Tr. at 292, 296, 300).

Given the record as a whole, substantial evidence supports the ALJ's decision to give little weight to Dr. Travis' opinion and to find Plaintiff did not have a severe impairment.

## IV. Conclusion

Upon review of the administrative record, and considering all of Mr. Sturdivant's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** on March 8, 2018.

_____
L. Scott Coogler
United States District Judge

160704